UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:19-cv-00319

**Coris Mack,**
*Plaintiff,*

v.

**RPC, Inc.,**
*Defendant.*

Before BARKER, *District Judge*

## ORDER

Coris Mack sues RPC, Inc. for injuries he suffered while working for RPC's subsidiary, Cudd Pressure Control, Inc. RPC moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, that motion (Doc. 6) is **granted**.

**Background**

According to the complaint, Mack was injured in an accident that occurred "at a facility located in Kilgore, Gregg County, Texas." Mack was walking near a group of workers who were trying to fix a jam in a pipe. The workers had driven two tractor-trailers over the pipe in order to hold the pipe still while they worked on it. For some reason, one of the tractor-trailers drove backward off the pipe. That caused the pipe to swing toward Mack and smack him so hard that he was "thrown approximately thirty feet in the air."

At the time of the accident, Mack was "working in the course and scope of his employment for Cudd Pressure Control." CPC is owned by the defendant, RPC. Mack claims that "Defendant, by and through its Safety Policy, voluntarily undertook the duty to 'provide a safe working environment' to Plaintiff." But Mack gives no more details about RPC's safety policy. He never indicates that RPC, as opposed to CPC,

owned or operated the facility where the accident occurred. And he never indicates that RPC, rather than CPC, hired or directed the workers who were handling the pipe.

RPC moves to dismiss the complaint under Rule 12(b)(6). Under Texas law, RPC argues, a company does not have a duty of care to the employees of its subsidiary just because it issues a policy statement like the one Mack quotes. Mack responds by attempting to distinguish the cases that RPC cites in its motion. Additionally, Mack argues that his complaint withstands Rule 12(b)(6) scrutiny because it gives RPC "fair notice of the basis for Plaintiff's claim."

**Analysis**

A complaint survives a Rule 12(b)(6) motion to dismiss only if it contains a "statement of the claim showing that the [plaintiff] is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To make the necessary showing, the claim must have "facial plausibility." *Id.* at 678. A claim has facial plausibility only if, when the plaintiff's factual allegations are "accepted as true," the court may "draw the reasonable inference that the defendant is liable." *Id.* Determining whether the factual allegations support such an inference is a "context-specific task." *Id.* at 679. The court gives no weight to the plaintiff's legal conclusions. *Id.* at 678. But the court pays close attention to the body of law that determines what facts the plaintiff must prove to hold the defendant liable for the alleged misconduct. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the relevant body of law is Texas state law. *See Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013) ("A federal court sitting in diversity applies the substantive law of the forum state.").

Neither party identifies a Texas Supreme Court case that directly controls the disposition of the state law issues in RPC's motion to dismiss. When a federal court sitting in diversity considers a state-law issue that has not been addressed by the relevant state's highest court, the federal court should

"defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise." *Learmonth*, 710 F.3d at 258 (cleaned up). Deference to the state's intermediate appellate courts is appropriate because, when sitting in diversity, a federal court's job is to "predict state law." *Id.* Here, a collection of decisions from Texas's intermediate appellate courts shows how they would decide the relevant legal issue, and the available case law indicates that the Texas Supreme Court would reach the same result.

In Texas, when a plaintiff sues in negligence, the "threshold inquiry" is whether the defendant owed the plaintiff a duty of care. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A person owes a duty of care to another person only if that duty arises out of a limited set of "special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). One of those relationships is between employer and employee: an employer owes its employee a duty to "provid[e] a safe workplace." *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993). But, where the employer is a corporate subsidiary, this duty is not necessarily shared by the employer's corporate parent. *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) (outside of some "exceptional circumstances," a court must not "hold a corporation liable for the obligations of its subsidiary").

Nevertheless, several of Texas's intermediate appellate courts have held that a parent corporation owes a duty of care to the employees of its subsidiary where the parent corporation "undertakes" to perform workplace safety services for the subsidiary. *See Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 717-19 (Tex. App. 2013) (collecting cases). This is an application of the negligent-undertaking theory of liability that is set forth in § 324A of the Second Restatement of Torts. *See id.* at 717; *see also Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991) (recognizing that § 324A is incorporated into

Texas law). A party commits an undertaking when it performs a service for another party, whether voluntarily or for consideration. *Torrington*, 46 S.W.3d at 837; *Sbrusch*, 818 S.W.2d at 395-96. Additionally, a party may commit an undertaking when it promises to perform a service for another party if the promise is followed by partial performance or reliance. *Sbrusch*, 818 S.W.2d at 396-97. Either way, when one person undertakes to perform a service for another person, the service-provider has a duty to the service-recipient to use reasonable care when performing the service. *Torrington*, 46 S.W.3d at 837. The service provider may also have a duty of care to third-party beneficiaries of the undertaking. *Sbrusch*, 818 S.W.2d at 396 (citing § 324A). Therefore, when a parent corporation undertakes to perform workplace-safety services for its subsidiary, it owes a duty of care to the subsidiary's employees as third-party beneficiaries of the undertaking. *Little*, 409 S.W.3d at 717-19; *Morvant v. Oil States Int'l, Inc.*, 3 F. Supp. 3d 561, 565 (E.D. La. 2014) (applying Texas law); *Johnson v. Abbe Eng'g Co.*, 749 F.2d 1131, 1132 n.1 (5th Cir. 1984) (predicting, before the relevant line of case law developed in Texas's intermediate appellate courts, that "Texas courts would impose on parent corporations those duties expressed in § 324A").

But not all undertakings give the parent corporation a duty to protect its subsidiary's employees from workplace injuries. To establish such a duty to a particular worker, an undertaking must lead the parent corporation to assume "actual control or a right of control over the specific aspect of safety and security . . . that led to the plaintiff's injury." *Morris v. Scotsman Indus., Inc.*, 106 S.W.3d 751, 754 (Tex. App. 2003) (citing *Tidwell*, 867 S.W.2d at 23); *see also Johnson*, 749 F.2d at 1133 (parent corporation has a duty to subsidiary's employees where the parent has "undertaken to inspect the specific instrument causing the injury or to inspect the entire plant of which the instrument was a part") (quoting *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982)). This is called "specific control." *Id.* at 755. By applying the specific-control

requirement in the negligent-undertaking context, the Texas intermediate appellate courts have mirrored the approach that other jurisdictions have taken when deciding whether parent corporations have incurred negligent-undertaking liability in workplace-injury cases brought by their subsidiaries' employees. *See Patentas*, 687 F.2d at 716; *see also Muniz v. Nat'l Can Corp.*, 737 F.2d 145, 149 (1st Cir. 1984) (no duty where parent corporation "provided general safety guidelines" that were "not specifically directed to the concentration of lead in the workplace").

To determine whether a parent corporation undertook to exercise specific control over an aspect of safety or security for its subsidiary, courts conduct a fact-intensive inquiry into the specific acts that the parent performed or had a right to perform. For example, in *Little v. Delta Steel, Inc.*, the court found that the parent corporation had a duty to an employee of its subsidiary who was crushed by a steel plate that fell off an electromagnetic crane. 409 S.W.3d 704, 721 (Tex. App. 2013). In finding that the parent corporation undertook to protect the worker from the incident with the crane, the court observed that the parent corporation (1) required the subsidiary to include specific provisions in its safety manual; (2) required the subsidiary to hire an outside company to inspect its cranes; (3) had the right to audit the plant where the accident occurred and had the right to require the subsidiary to correct any safety issues that the auditors identified; (4) had the right to compel the subsidiary to stop using a faulty crane; and (5) required the subsidiary to submit accident reports each month. *Id.*

By contrast, a parent corporation does not undertake to exercise specific control over an aspect of safety at its subsidiary just because the parent expresses a general commitment to workplace safety. For example, in *Cleveland Regional Medical Center, L.P. v. Celtic Properties, L.C.*, the court found that the parent corporation never "undertook to perform . . .

maintenance or repair" work on its subsidiary's office space. 323 S.W.3d 322, 351 (Tex. App. 2010). The court's conclusion that there was no undertaking was undisturbed by the existence of a policy manual, circulated by the parent corporation and "applicable" to the subsidiary, that said the parent was "committed to providing a safe and healthy workplace for all colleagues." *Id.* at 351. *See also Muniz*, 737 F.2d at 148 ("mere concern with . . . safety matters" does not "create[] a duty to ensure a safe working environment for the employees of a subsidiary corporation").

Here, Mack's complaint contains no factual allegations about specific acts that RPC performed or had a right to perform with respect to any aspect of safety or security at CPC. Instead, Mack quotes an RPC safety policy that expresses a general commitment to "provide a safe working environment." But, in *Celtic Properties*, the parent corporation's issuance of a policy manual that said the parent was "committed to providing a safe and healthy workplace" did not constitute an undertaking to perform maintenance and repair work on the subsidiary's office space. Likewise, RPC's issuance of a safety policy that says RPC will "provide a safe working environment" does not constitute a specific undertaking to ensure that CPC employees at the Kilgore facility are protected from accidents involving pipes. Mack alleges no other facts showing that RPC undertook to exercise specific control over the aspects of safety that caused his injury. Therefore, Mack has not alleged facts sufficient to show that RPC had a duty toward him.

Mack attempts to distinguish *Celtic Properties* on two grounds. First, in *Celtic Properties*, the issue was whether the parent corporation owed a duty of care to the subsidiary's landlord; here, the issue is whether the parent owes a duty to the subsidiary's employees. That is true but irrelevant. Both cases involve an application of § 324A, which provides that a person who undertakes to perform services for another person may be liable in negligence to third-party beneficiaries of

the undertaking. *See Celtic Properties*, 323 S.W.3d at 351. The difference between the cases is the identity of the third-party beneficiary: in *Celtic Properties*, the third-party beneficiary was the subsidiary's landlord; here, the third-party beneficiary is the subsidiary's employee. But the identity of the third-party beneficiary is irrelevant to the current issue: whether the parent corporation undertook to provide workplace safety services for its subsidiary.

Second, Mack says, the policy manual in *Celtic Properties* said the parent corporation would provide a "safe and healthy workplace," but the landlord's claim was that the parent had failed to prevent water damage to the subsidiary's office space. Mack may be trying to argue that water damage in office space was outside the scope of the parent corporation's commitment to workplace safety, and that this was the real reason the court found that the parent had not engaged in an undertaking to prevent water damage to its subsidiary's office space. But that cannot be true. The decision in *Celtic Properties* rested on the finding that the parent corporation never undertook to perform "any services . . . with respect to the maintenance or repair of the property." *Celtic Properties*, 323 S.W.3d at 351 (cleaned up). The term "any services" clearly covered any maintenance or repair work that would have been necessary to prevent water damage.

Even if the Texas Supreme Court were to reject the Texas intermediate appellate courts' decision to apply the specific-control requirement to workplace-safety undertakings, Texas's negligent-undertaking law would not impose a duty on RPC on the facts alleged in Mack's complaint. The only undertaking Mack alleges is RPC's promise, communicated in its safety policy, to "provide a safe working environment" to CPC employees. The Texas Supreme Court has held that a promise may constitute an undertaking under § 324A only if it is accompanied by at least one of two things: partial performance or reliance. *Sbrusch*, 818 S.W.2d at 396-97. Mack does not allege that RPC took any steps toward performance. Thus, any ability to state a claim hinges on the court's finding that someone—presumably CPC or Mack—relied on the promise.

The Texas Supreme Court has expressly declined to decide whether reliance alone, without partial performance, can transform a promise into an undertaking under § 324A. *Sbrusch*, 818 S.W.2d at 397.

But, even if the Texas Supreme Court decided that reliance alone could transform a promise into an undertaking under § 324A, the factual allegations in Mack's complaint would not allow a reasonable fact finder to infer that reliance existed in this case. Mack has not alleged that any party relied on the quoted statement in RPC's safety policy. Thus, to allow the complaint to proceed, the court would have to conclude that the quotation itself supports the inference that CPC or its employees relied on RPC's promise.

The court concludes that the quotation alone could not support an inference of reliance. The cases that the Texas Supreme Court has cited in support of the proposition that reliance alone can transform a promise into an undertaking all involved promises to take a specific action in response to a specific danger or specific circumstance. *See Sbrusch*, 818 S.W.2d at 396 (citing W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 56 at 380 (1984) (citing *Marsalis v. LaSalle*, 94 So.2d 120 (La. App. 1957) (promise to quarantine a cat during a rabies outbreak); *Dudley v. Victor Lynn Lines*, 138 A.2d 53 (N.J. App. 1958) (promise to call a doctor for a sick employee), reversed on other grounds, 161 A.2d 479 (N.J. 1960); *DeLong v. County of Erie*, 89 A.D.2d 376 (N.Y. App. 1982) (promise by 911 dispatcher to notify police of the caller's emergency); *Johnson v. Souza*, 176 A.2d 797 (N.J. App. 1961) (promise to pour salt over icy steps); *Mixon v. Dobbs Houses, Inc.*, 254 S.E.2d 864 (Ga. App. 1979) (employer's promise to tell employee that his wife was in labor))).

Those cases reflect a core principle of negligent-undertaking law: liability is appropriate where, if the defendant undertakes to perform an act, careless execution or nonexecution of the act "launch[es] a force or instrument of harm." *Sbrusch*, 818 S.W.2d at 396 n.2 (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 898 (N.Y. 1928) (Cardozo, C.J.)). When one person promises to pour salt over icy steps, failure to do

so launches a force or instrument of harm because the promisee will walk on the steps with the expectation that they will no longer be icy even though the promisee refrained from pouring salt on the steps himself.

The instrument-of-harm principle does not apply here. A parent corporation's unspecific promise to "provide a safe working environment" is unlikely to induce a subsidiary to refrain from taking whatever safety measures the subsidiary is legally obligated to take for its employees. *See Tidwell*, 867 S.W.2d at 21 (employer owes a duty to employees to take reasonable precautions for workplace safety). Therefore, without more factual allegations, Texas courts would be unlikely to find that the quoted policy statement induced the kind of reliance that is actionable.

Finally, Mack tries to distinguish the cases cited in RPC's motion to dismiss on the ground that they were all decided at summary judgment or after jury trials. Presumably, Mack's argument is that, because those cases progressed beyond the pleading stage, this one should too. That fails to address the relevant issue: whether the complaints in these cases survived motions to dismiss under the federal standard for Rule 12(b)(6) motions without more factual allegations on the defendant's duty than Mack's complaint contains. Mack provides no reason to believe so.

**Conclusion**

For the reasons stated above, defendant's motion to dismiss is **granted**.

*So ordered by the court on February 20, 2020.*

J. CAMPBELL BARKER
United States District Judge